UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS VINES,

        Petitioner,

v.                                                 Case Number: 07-cv-13728
                                                 Honorable Marianne O. Battani

BLAINE LAFLER,

        Respondent.
_____/

OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS

I.      INTRODUCTION

Before the Court is Petitioner Travis Vines's[1] petition for writ of habeas corpus, filed

pursuant to 28 U.S.C. § 2254.  (Dkt. #1).  Petitioner, a state inmate currently incarcerated at the

Saginaw Correctional Facility[2] in Freeland, Michigan, was convicted of (1) two counts of armed

robbery, MICH.COMP.LAWS § 750.529, (2) assault with intent to do great bodily harm less than

murder, MICH.COMP.LAWS § 750.83, (3) felon in possession of a firearm, MICH.COMP.LAWS §

750.224f, and (4) possession of a firearm during the commission of a felony, MICH.COMP.LAWS

§ 750.227b.  He was sentenced, as a habitual offender, second, MICH.COMP.LAWS § 750.10, to

---

[1]Petitioner was also known as Travis Trice, Travis Scott, and John Wright.

[2]At the time Petitioner filed his habeas petition, he was incarcerated at the St. Louis
Correctional Facility in St. Louis, Michigan.  However, he has since been transferred to the
Saginaw Correctional Facility in Freeland, Michigan.  The proper respondent in a habeas case is
the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of
the facility where the petitioner is incarcerated.  Rule 2(a) of the Rules Governing § 2254 Cases;
*See also Edwards v. Johns*, 450 F.Supp2d 755, 757 (E.D. Mich. 2006).  In most cases where a
petitioner is transferred to a different facility after the petition has been filed, the Court would
order an amendment of the case caption.  However, because the Court is denying the petition in
this case, it finds no reason to do so.

concurrent terms of (1) twenty-eight to fifty years in prison for the armed-robbery convictions,

(2) six-and-one-half to ten years in prison for the assault conviction, (3) two-and-one-half to five

years in prison for the felon-in-possession conviction, and (4) the mandatory two years in prison

for the felony-firearm conviction. In his *pro se* pleadings, Petitioner challenges his convictions

and sentences on the following grounds: (1) ineffective assistance of trial and appellate counsel;

(2) violation of his right to an impartial jury panel; and, (3) a *Blakely v. Washington*[3] violation.

For the reasons stated below, the Court will deny the petition.

## II.    BACKGROUND

Petitioner's troubles in this case began on June 19, 2000, in Detroit, Michigan.

According to the prosecution's theory, Petitioner, while armed with a weapon, robbed Artize

McCurry and Michelle Martin, and, assaulted McCurry with the intent to murder him.

Trial began on April 18, 2001. McCurry was first to testify. According to his testimony,

on the day in question, he and Martin stopped at a gas station at approximately 3:00 a.m. He

said that, as he was paying his gas bill, two armed men approached him, one of which demanded

money. McCurry testified that, as he reached into his pocket, he was shot. He said that he fell to

the ground, and, when he did, one of the armed men again asked him for money, while the other

man, later identified as Petitioner, ran over to the passenger side of the car and told Martin to

hand over her purse, which she did.

According to McCurry, the men got the money and then ran off. McCurry testified that

Martin flagged down a cab and then called the police. He said that EMS and the police arrived

shortly afterward. McCurry testified that he gave the police a description of the two men and

_____

[3]542 U.S. 296 (2004).

then was taken to the hospital, where he was treated for gunshot wounds.  He said that he was

hospitalized for about three weeks.  McCurry also told the police that one of the men carried a

revolver, while the other carried a nine-millimeter chrome pistol.  McCurry testified that he

heard approximately six shots fired.

About one month after the robbery, McCurry testified that he was contacted by the police

to view a lineup, where he immediately identified Petitioner as the man who robbed and shot him

on the night in question.

Detroit Police Officer Doyle Anthony Cleland testified next.  According to his testimony,

he and his partner, Officer Darrell Martin, responded to a call from dispatch on June 19, 2000.

According to Officer Cleland's testimony, McCurry, who appeared to have been shot, was still

able to give them a description of the perpetrators, as was passenger Martin.  Officer Cleland

said that the McCurry vehicle was then secured for evidence.

Julius Moses, an investigator for the Detroit Police Department, testified that he

interviewed McCurry by telephone on July 16, 2000, where he arranged for a corporeal lineup.

McCurry identified Petitioner immediately.  Investigator Moses said that McCurry "steps in and

he immediately told me that he sees the person that robbed him and shot him," pointing directly

to Petitioner.  Investigator Moses testified that "[h]e pointed his finger out at the glass and said,

'That's him.  That's the one.'"  (Trial Tr. vol. I, 146, Apr. 18, 2001.)

Michelle Martin testified next.  She said that, on the night in question, she was with

McCurry, when they stopped at a gas station.  Martin testified that she stayed in the car, while he

went to pay for the gas.  According to Martin, she then saw two men approach from the rear of

the gas station; she testified that she heard mumbling and then gunshots.  Martin said that

3

Petitioner then opened the passenger's door and took her purse.  She testified that he had a weapon. Martin testified that the other man also had a gun.

Martin further testified that she then saw McCurry lying on the ground, bleeding.  She said that she flagged down a cab; the driver called the police.  According to Martin, the police and the ambulance arrived shortly thereafter.  She was then interviewed by the police; she gave a description of both individuals.  Martin testified that the incident lasted about three minutes and that McCurry was shot three times.  Approximately six months later, Martin was again interviewed by the police.

The prosecution then rested.  The defense moved for a directed verdict, which was denied.

Petitioner presented no evidence.

The trial judge instructed the jury.  Subsequently, the jury returned a verdict of guilty on all charges.  On May 7, 2001, Petitioner was sentenced as stated above.

Following his sentencing, Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals, raising the following claims:

> I.    [Petitioner] is entitled to resentencing where the imposed sentences violated the principles of proportionality, due to misscoring of the offense variables, and the resulting sentences were a departure from the statutory sentencing guidelines.
>
> II.   [Petitioner's] convictions should be reversed because he was denied due process and effective assistance of counsel where, during voir dire, a prospective juror tainted the rest of the panel.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.  *People*

*v. Travis Trice, a/k/a Travis Scott, a/k/a John Wright, a/k/a/ Travis Eugene Vines*, No. 235920,

2003 WL 21480720 (Mich.Ct.App. June 26, 2003).

Petitioner subsequently filed an application for leave to appeal that decision with the

Michigan Supreme Court, raising the same claims as raised in the Court of Appeals.  On

December 30, 2003, the Michigan Supreme Court denied Petitioner's application "because we

are not persuaded that the questions presented should be reviewed by this Court."  *People v.*

*Travis Trice, a/k/a Travis Scott, a/k/a John Wright, a/k/a Travis Eugene Vines*, 469 Mich. 987,

673 N.W.2d 762 (2003).

Petitioner then filed a motion for relief from judgment pursuant to Mich.Ct.R. 6.508(D),

raising the following claims:

> I.    [Petitioner] was denied the effective assistance of appellate counsel where
>       his appellate attorney did not raise an obvious jury taint issue on direct
>       appeal.
>
> II.   [Petitioner's] [Sixth] Amendment right to have an impartial jury was
>       violated when a prospective juror tainted the rest of the jury panel.
>
> III.  [Petitioner] is entitled to re-sentencing where his guideline range was
>       increased based on facts not proven to a jury beyond a reasonable doubt,
>       nor admitted by [Petitioner] in violation of the [Sixth and Fourteenth]
>       Amendments of the [United States] Constitution.

The trial court denied the motion.  *People v. Trice*, No. 00-09642-01 (Wayne County

Circuit Court, Apr. 12, 2006).  Petitioner's subsequent applications for leave to appeal that

decision were denied by both state appellate courts.  *People v. Vines*, No. 271749 (Mich.Ct.App.

Jan. 31, 2007); *People v. Vines*, 478 Mich. 928, 732 N.W.2d 912 (2007).

Petitioner filed his habeas petition on September 5, 2007, raising the following claims:

I.   [Petitioner] was denied due process and effective assistance of counsel where, during voir dire, a prospective juror tainted the rest of the panel and counsel failed to request a cautionary instruction or a new jury panel.

II.   [Petitioner] was denied due process and effective assistance of counsel on appeal for failing to raise an obvious jury taint and *Apprendi/Blakely* issue on direct appeal and to file a remand motion for evidentiary hearing.

III.   [Petitioner] was denied due process and his right to an impartial jury where the entire panel was tainted.

IV.   [Petitioner] was denied his right to a trial by jury when the judge increased his sentence based on information not charged in the warrant or proved to a jury beyond a reasonable doubt.

## III.   STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts normally are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved

an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d

429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ;

rather, the state court's application of federal law "must have been objectively unreasonable."

*Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal

quotations omitted)).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ

of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct."); *see also*

*West v. Sibilate*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete

deference to state court findings of historical fact unless they are clearly erroneous").

  The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the
> governing law set forth in our cases . . . .  A state-court decision will also be
> contrary to this Court's clearly established precedent if the state court confronts a
> set of facts that are materially indistinguishable from a decision of this Court and
> nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

  The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  *Williams*, 529 U.S.

at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable . . . .
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law . . . .   Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that
> court concludes in its independent judgment that the relevant state-court decision
> applied clearly established federal law erroneously or incorrectly.  Rather, that
> application must also be unreasonable.

*Id.*, at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*,

475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006);

*Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512

(6th Cir. 2003) (en banc).

With that in mind, the Court proceeds to the merits of Petitioner's habeas petition.

## IV.     DISCUSSION

### A.     Ineffective of assistance of counsel claim regarding jury panel and cautionary instruction

In his first claim, Petitioner alleges that his trial counsel was ineffective for failing to

request a new panel or a cautionary instruction after one juror was excused for cause.  The

Michigan Court of Appeals, the last court to issue a reasoned decision regarding this issue,

stated:

> During voir dire a potential juror stated that she had been the victim of a
> robbery five years earlier, and that defendant resembled the person who robbed
> her.  She was excused for cause.  Defendant argues that trial counsel rendered
> ineffective assistance by failing to request that an entirely new panel be
> assembled or that the trial court caution the other potential jurors to disregard this
> person's statement.  We disagree.  Defendant did not preserve this issue by
> moving in the trial court for an evidentiary hearing pursuant to *People v. Ginther*,
> 390 Mich. 436; 212 NW2d 922 (1973), or for a new trial.  *People v. Wilson*, 242
> Mich.App 350, 352; 619 NW2d 413 (2000).  Therefore, our review is limited to
> the facts on the record.  *People v. Hedelsky*, 162 Mich.App 382, 387; 412 NW2d
> 746 (1987). Trial counsel's decision to avoid calling further attention to the

potential juror's remark by requesting that the panel be replaced or that the trial
court give a cautionary instruction constituted trial strategy.  We do not substitute
our judgment for that of counsel regarding matters of trial strategy.  *People v.
Rice (On Remand)*, 235 Mich.App 429, 445; 597 NW2d 843 (1999).  The trial
court instructed the jury both before and after evidence was introduced that it
could consider only properly admitted evidence.  Jurors are presumed to follow
their instructions.  *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998).
Furthermore, McCurry and Martin testified unequivocally that defendant shot
McCurry and took Martin's purse.  The evidence against defendant was
overwhelming.  Defendant has not shown the existence of prejudice in that he has
not shown that but for counsel's errors, the result of the proceedings would have
been different.  *Carbin*, *supra*.  Defendant has not overcome the presumption that
counsel rendered effective assistance.  *Rockey*, *supra*.

*Trice*, No. 235920, 2003 WL 21480720, at *3.

First, in order to establish ineffective assistance of counsel, it must be shown that

counsel's performance was deficient and that the deficient performance prejudiced the defense

so as to render the trial unfair and the result unreliable.  *Strickland v. Washington*, 466 U.S. 668,

687 (1984).

With respect to the performance prong of the *Strickland* test, a petitioner must identify

acts that were "outside the wide range of professionally competent assistance" in order to prove

deficient performance.  *Strickland*, 466 U.S.  at 690.  The reviewing court's scrutiny of counsel's

performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is one that is

9

sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging

any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the [proceeding] cannot be relied on as having

produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting

*Strickland*, 466 U.S. at 686).

Second, the Sixth Amendment guarantees the right to a trial by an impartial jury.

*Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness

requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *Irvin*

*v. Dowd*, 366 U.S. 717, 722 (1961). The question of whether a trial court has seated a fair and

impartial jury is a factual one involving an assessment of credibility. *Gall v. Parker*, 231 F.3d

265, 308 (6th Cir. 2000) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). A state trial

court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct

under § 2254, unless a habeas petitioner can prove otherwise by convincing evidence. *Gall*, 231

F.3d at 334.

In this case, Petitioner failed to move for a new trial and evidentiary hearing in the trial

court pursuant to *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973). Therefore,

review of this claim is limited to errors apparent on the record. Under 28 U.S.C. § 2254(e)(1),

factual findings by the state court are presumed correct unless rebutted by clear and convincing

evidence.

Regarding counsel's ineffectiveness and the cautionary jury claim, the Court concludes

that the claim fails because, even if trial counsel's performance was deficient for failing to

request a new panel or a cautionary instruction, Petitioner cannot demonstrate that he was

prejudiced by that failure.  The evidence against Petitioner was overwhelming; he was

unequivocally identified by McCurry and Martin.

Thus, the Court finds that the Michigan Court of Appeals' decision that, " [petitioner] has

not shown the existence of prejudice in that he has not shown that but for counsel's errors, the

result of the proceedings would have been different" was reasonable and supported by the

record.  *Trice*, No. 235920, 2003 WL 21480720, at *3.  The Court therefore finds that the

Michigan Court of Appeals' adjudications of Petitioner's ineffective assistance of counsel claim

was neither contrary to, nor an unreasonable application of, clearly established Supreme Court

precedent.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

> **B.**     **Ineffective assistance of appellate counsel for failing to raise issues of tainted jury panel and sentencing on appeal**

In his second claim, Petitioner contends that his appellate counsel was ineffective

because he failed to raise an obvious jury taint issue and an *Apprendi[4]/Blakely* issue on direct

appeal.  However, Petitioner's jury-taint issue was presented on appeal.  As to the other

issue–his sentencing claim–appellate counsel is not required to raise every non-frivolous issue.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983).

In order for Petitioner to claim of ineffective assistance of appellate counsel, he must

show that his appellate counsel's failure to raise that issue rose to the level of a constitutional

violation under *Strickland*, 466 U.S. 668.  *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.

2004).  Counsel's failure to raise an issue on appeal could only be ineffective assistance if there

---

[4]*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *See McFarland*, 456 F.3d at 699 (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Tactical choices regarding issues on appeal "are properly left to sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1985).  Thus, even if the issues might have had merit, counsel is not deficient for failing to raise them on appeal.

Regarding Petitioner's sentencing claim, his claim would not have had merit because Michigan has an indeterminate sentencing system as opposed to the determinate sentencing system which is at issue in *Blakely v. Washington,* 542 U.S. 296 (2004), and which Petitioner relies on for support for this claim.[5]  However, Petitioner's claim is unaffected by the holdings in *Apprendi* and *Blakely*.  *See* Section D.  Because there were no meritorious sentencing issues to be raised in this case, appellate counsel's failure to raise the sentencing issue did not constitute ineffective assistance of appellate counsel.  *Lambrix v. Singletary*, 72 F.3d 1500, 1507 (11th Cir. 1996); *aff'd* 520 U.S. 518 (1997).

Petitioner is therefore not entitled to habeas relief regarding his ineffective assistance of appellate counsel claim.

### C.    Jury claim–Tainted jury panel

Next, Petitioner contends that one of the jurors, who was the victim of a robbery, tainted the jury panel because she said that Petitioner looked like the perpetrator in her case.

Here, Petitioner has not demonstrated that the comment of venire woman Gail Minnifield infected the rest of the panel.  (Trial Tr. vol. I, 49-51, Apr. 18, 2001.)  In fact, subsequent

---

[5]Petitioner also relies on *Apprendi* for support.

questioning suggested otherwise.  The mere fact that the juror said that she thought Petitioner's

name and face were familiar to her, and was later excused for cause, was no basis to claim that

the entire panel was somehow tainted.  "If such were the case, every time a juror stated an

opinion, favorable or unfavorable, about a party, and was later excused, it would be almost

impossible to obtain a jury, particularly in smaller communities.  Such is not the law."  *Harmon*

*v. Anderson*, 495 F.Supp. 341, 342 (E.D. Mich. 1980).

Petitioner has presented no evidence that any of the remaining jurors were tainted by

Juror Gail Minnifield's comments.  All of the jurors stated that they could be fair and impartial

and would base their decision solely on the evidence presented in court.  Ms. Minnifield was

removed for cause.  The state courts' conclusion that the remaining jury panel was untainted, and

therefore Petitioner received a fair trial, is not contrary to or an unreasonable application of

Supreme Court precedent.  *See also* Section A.

### D.      Sentencing Claim

Petitioner next claims that the trial court improperly increased his sentence based

on information not charged in the warrant or proved to a jury beyond a reasonable doubt.

In support of his claim, Petitioner relies on *Blakely*, in which the United States Supreme

Court held that, other than the fact of a defendant's prior conviction, any fact that increases or

enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must

be submitted to the jury and proven beyond a reasonable doubt.  *Id.* at 301 (*citing Apprendi*, 530

U.S. at 490).

The problem with Petitioner's reliance on *Blakely* is that *Blakely* involved a trial court's

departure from the State of Washington's determinate sentencing scheme.  Michigan, by

13

contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778 (2006); *People v. Claypool,* 470 Mich. 715, 730, n. 14, 684 N.W.2d 278 (2004) (both citing MICH.COMP.LAWS § 769.8).  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence."  *Drohan,* 475 Mich. at 161.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range.  *See People v. Babcock,* 469 Mich. 247, 255, n. 7, 666 N.W.2d 231 (2003) (citing MICH.COMP.LAWS § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool,* 470 Mich. at 730, n. 14.  Michigan's indeterminate sentencing scheme is thus unaffected by the Supreme Court's holding in *Blakely.  Drohan,* 475 Mich. at 164

Therefore, the decision in *Blakely* has no application to Petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury.  *See Blakely*, 542 U.S. at 304-05, 308-09.  Because *Apprendi* and *Blakely* do not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's calculation of Petitioner's sentencing guidelines range did not violate Petitioner's Sixth Amendment rights.  *See Tironi v. Birkett*, 252 Fed.App'x 724, 725 (6th Cir. 2007); *see also Brown v. Bell*, No. 07-2208 (6th Cir. Mar. 7, 2008), *cert. den.* 129 S.Ct. 129 (2008) (declining to

grant a certificate of appealability to a habeas petitioner on *Blakely*-type claim).  Against that backdrop, Petitioner is not entitled to habeas relief on this claim.

## V.    CONCLUSION

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Petitioner has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, **IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus [dkt. # 1] is **DENIED**.

> s/Marianne O. Battani
> MARIANNE O. BATTANI
> UNITED STATES DISTRICT JUDGE

Dated: October 9, 2009

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon the petitioner and counsel for the respondent.

> s/Bernadette M. Thebolt
>
> Case Manager

15